COMMONWEALTH of Pennsylvania,
Appellee,

v.

Troy Armstrong TOWNSEND,
Appellant.

Superior Court of Pennsylvania.

Submitted July 12, 1999.

Filed Feb. 8, 2000.

Joseph Caruso, Kittanning, for appellant.

Scott J. Andreassi, Dist. Atty., Kittanning, for the Com., appellee.

Before DEL SOLE, EAKIN and BECK, JJ.

EAKIN, J.

¶ 1 In the early morning of July 4, 1997, appellant forcibly entered the residence of Tiffany Townsend, his ex-wife, while she and her young daughter were asleep. He struck her in the head, either with his hand or a gun he held, then strangled her. While she escaped momentarily, appellant forced her back inside, then beat and

kicked her in the head and arms, and threatened to kill her. When he finally left, he took her high school ring and some photographs.

¶ 2 Trooper Mickey Bowser arrested and interviewed appellant. He testified at trial to incriminating statements appellant made, which had been reduced to writing and signed by appellant. Appellant testified he drove to Ms. Townsend's home, but walked away after seeing his daughter through a window; the next thing he remembered was calling Ms. Townsend the following afternoon. He testified he did not contest the victim's testimony about what he had done.

¶ 3 Appellant was convicted of aggravated assault, burglary, simple assault, recklessly endangering another person, criminal mischief, unlawful restraint and theft by unlawful taking; he was sentenced to sixty to one hundred twenty months incarceration for aggravated assault, thirty to sixty months consecutively for burglary, and four to twenty-four months for unlawful restraint, concurrent to his other sentences.[1] Appellant's post sentence motions were denied February 22, 1999. This appeal followed.

¶ 4 Appellant first claims his sentence should be modified because the Commonwealth did not prove he "visibly possessed" a firearm during the crime. Appellant claims the evidence about holding the gun was equivocal, based in part on the following testimony provided by Ms. Townsend:

A:  He had to go to the bathroom. I had a hold of her [Ms. Townsend's daughter] and tried to escape by that door and he got a hold of us and brought us back in and I was crouched, hunched by the bath tub and he kicked me there. He took her away from me and put her in my room and told me to get into the

---

1. The charges of simple assault and recklessly endangering another person merged with aggravated assault for sentencing purposes, and appellant was found guilty without further penalty on the theft.

bath tub and he kicked me some more.

Q: Did he still have the weapon at that point?

A: It was either tucked into his pants or lying on my dresser.

N.T. Trial, 8/14/98, at 34.

¶ 5 42 Pa.C.S. Section 9712(a) requires a person convicted of a crime of violence be given a minimum sentence of at least five years, if the person visibly possessed a firearm that placed the victim in reasonable fear of death or serious bodily injury during the offense. Section 9712 applies when possession "manifests itself in the process of the crime." *Commonwealth v. Healey*, 343 Pa.Super. 323, 325–26, 494 A.2d 869, 870 (1985) (mandatory minimum sentence applied even where defendant fired a shotgun through a closed door because use of the firearm produced a visible effect). "Visible possession" means the gun was seen by or had a visible effect on the victim. *Healey*, at 870. A person can visibly possess a hidden firearm, when "it is the firearm, which has facilitated the offense." *Commonwealth v. Wooten*, 519 Pa. 45, 53–55, 545 A.2d 876, 880 (1988). A preponderance of the evidence makes subsection (a) applicable. 42 Pa.C.S. § 9712(b).

¶ 6 Ms. Townsend testified that when she first saw appellant, "[h]e had a small gun, which he had in his hands." N.T. Trial, at 27. He struck her in the head with either the gun or his hand. Regardless of whether Ms. Townsend was struck with the gun or the hand in which it was held, and regardless of whether the gun was later on the dresser or tucked in appellant's pants, the gun was present at the outset of the assault and remained in appellant's control or possession. Throughout her ordeal, Ms. Townsend was aware of the gun and was subjugated by appellant's possession and display of it. As the gun manifested itself throughout the assault, appellant visibly possessed the gun under Section 9712.

¶ 7 Appellant also claims he should not have received an enhanced minimum sentence under 204 Pa.Code Section 303.10(a)(1).[2] We have already concluded appellant was in visible possession of the gun, and need not address this claim further. Appellant's motion to modify sentence was properly denied.

¶ 8 This case also presents us with a knotty evidentiary issue. Appellant claims the trial court violated the best evidence rule when it allowed his confession to be read into evidence. Trooper Bowser conducted the interrogation that included the confession and the writing of it; he testified to its contents and read portions of it verbatim. Defense counsel objected, contending a proper foundation had not been laid and that the confession had not been admitted into evidence.[3] The confession was clearly present, as the trooper read from it, but for unexplained reasons the written copy was not admitted into evidence and does not appear in the certified record.

¶ 9 "The 'best evidence' rule, now established in Pa.R.E. 1002, limits the method of proving the terms of a writing to the presentation of the original writing, where the terms of the instrument are material to the issue at hand, unless the original is shown to be unavailable through no fault of the proponent." *Commonwealth v. Lewis*, 424 Pa.Super. 531, 533–35, 623 A.2d 355, 357 (1993)(citing McCormick, Evidence at 560 2d ed.1972). The rule applies to "the proof of the contents of documents when the contents of those doc-

---

2. 204 Pa.Code Section 303.10(a)(1) states: "An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control: (i) Any firearm whether loaded or unloaded."

3. The objection, that the written confession had not been admitted into evidence, is not the same as an objection on the basis of the best evidence rule, but as it involves a similar concept, we will not deem the issue waived.

uments are material to, rather than mere evidence of, the issues at bar." *Lewis, supra,* (quoting *Durkin v. Equine Clinics, Inc.,* 313 Pa.Super. 75, 78–80, 459 A.2d 417, 419 (1983), *appeal denied,* 524 Pa. 608, 569 A.2d 1367 (1989)). "Beyond that, the evidentiary ruling of the trial court allowing 'secondary evidence' should not be reversed except for a grave abuse of discretion...." *Commonwealth v. Byers,* 320 Pa.Super. 223, 229–31, 467 A.2d 9, 13 (1983)(quoting *Ledford v. Pittsburgh and Lake Erie R.R. Co.,* 236 Pa.Super. 65, 74–75, 345 A.2d 218, 224 (1975)).

■ ¶ 10 The learned trial court and both parties stated the best evidence rule was applicable and was violated because the contents of the confession are material to the issue of appellant's guilt or innocence. We must disagree. The rule is not implicated just because evidence is relevant; the rule applies where the writing itself is necessary to that which must be proved. "The best evidence rule is controlling only if the terms of a writing must be proved to make a case or provide a defense." *Warren v. Mosites Construction Co.,* 253 Pa.Super. 395, 402, 385 A.2d 397, 400 (1978); *see also Commonwealth v. Harris,* 719 A.2d 1049, 1051 (Pa.Super.1998). While the contents of appellant's confession makes compelling evidence for the Commonwealth's case, the Commonwealth did not need to prove those contents in order to establish the elements of its case. The contents were not an element of the crime; they were part of the evidence the Commonwealth chose to present to prove appellant did what was alleged in the charging documents.

¶ 11 This is not a contract, the terms of which are determinative of the rights or obligations of the parties. There is no element of a writing in the proofs the Commonwealth was obliged to present. The statement was a relevant part of the evidence, but it is not a necessary part of the proof. It was not necessary for conviction. If the crime were forgery, or a written threat, the terms of a writing may be necessary proof, but the crimes here are burglary and assault. The prosecution had to show entry and the causing of the requisite bodily injury with the requisite intent; it did not have to prove a confession or any other writing.

¶ 12 In *Commonwealth v. Smith,* 374 Pa. 220, 97 A.2d 25 (1953), a police officer was present when Smith made a written confession. Over defense objection, the officer referred to a page that was not written in his presence. Smith claimed a best evidence rule violation, but the Supreme Court held the claim failed because the officer's response did not constitute testimony as to the *content* of the confession. In so doing, the Court did *not* hold that the rule applied, as has been suggested. It held that if the contents of the writing were not introduced, the rule could not be violated even if it were applicable. *Id.,* at 34. However, the Court did not hold the rule applicable.

¶ 13 *Commonwealth v. Lewis, supra,* reaffirms the rule's applicability if the contents of the writing *must* be proved to make a case. In that case, the rule was extended to a videotape, which recorded a defendant shoplifting; the tape was later lost. At trial, two Commonwealth witnesses were called. One was a store employee, who testified to watching the shoplifting as it occurred; the other was a policeman called to the scene, who only watched the tape but testified to its contents. The latter's testimony was held subject to the rule, as the contents of the tape were the very acts of the accused, the direct depiction of that which occurred. However, the employee's testimony was not complained of—he had direct knowledge, and could not be rendered incapable of direct testimony simply ·because the things he saw were taped and the tape lost.

¶ 14 The same analysis applies here. Trooper Bowser was present and heard the confession. Can he be rendered incompetent to testify to what he saw and

heard simply because the questions and answers were reduced to writing? The logic behind the rule says he cannot.

> The rationale for the [best evidence] rule is readily apparent: in light of the added importance that the fact-finder may attach to the written word, it is better to have available the exact words of a writing, to prevent "the mistransmitting [of] critical facts which accompanies the use of written copies or recollection," and to prevent fraud.

*Lewis,* at 358 (quoting *Hamill–Quinlan, Inc. v. Fisher,* 404 Pa.Super. 482, 591 A.2d 309 (1991) (citations omitted)). Furthermore,

> Most modern commentators follow (Wigmore's) lead in asserting that the basic premise justifying the rule is the central position which the written word occupies in the law. Because of this centrality, presenting to a court the exact words of a writing is of more than average importance, . . . .

> \* \* \*

> (2) oral testimony purporting to give from memory the terms of a writing is probably subject to a greater risk of error than oral testimony concerning other situations generally. The danger of mistransmitting critical facts which accompanies the use of written copies or recollection, but which is largely avoided when an original writing is presented to prove its terms, justifies preference for original documents.

McCormick, Evidence § 233 (4th ed.1992) (citations omitted).

¶ 15 This concept speaks to "terms" of the writing, again pointing out its focus is not party admissions, but matters which have the writing itself as the issue. This confession did not have "terms." A writing may be central to a contract, a lease, a release or an insurance policy, but it is not central to the validity of a party's admission. In an action based on the terms of a written contract, the writing may be the best evidence of those terms, but if it is not introduced, a party's admissions against interest are not precluded from evidence.

¶ 16 The folly of applying this rule here is shown by the circumstances. The trooper was reading from the confession itself. It was there in the courtroom. As the record shows no complaint about discovery, there is no reason to presume appellant's counsel lacked a copy or received it late. Counsel's cross-examination did not question the contents or "terms" of the statement. While the objection was proper and the written confession should have been offered and admitted, we can detect no prejudice to appellant in the failure to formally introduce it.

¶ 17 Even if the best evidence rule was violated, there was independent, overwhelming evidence of appellant's guilt, such that the error was harmless. An error may be deemed harmless "where properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Commonwealth v. Story,* 476 Pa. 391, 412–14, 383 A.2d 155, 166 (1978) (citations omitted).

> Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the [appellant]'s guilt. If "honest, fair minded jurors might very well have brought in not guilty verdicts," an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

*Id.* (citing *Commonwealth v. Davis,* 452 Pa. 171, 180–82, 305 A.2d 715, 721 (1973), quoting *Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967),

*rehearing denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967)). When deciding whether an error is harmless because there is overwhelming properly admitted overwhelming evidence of guilt, the untainted evidence relied upon must be uncontradicted. *Commonwealth v. Weir,* 738 A.2d 467, at 472 (Pa.Super.1999) (citation omitted).

¶ 18 There was plenty of independent evidence of appellant's guilt, even without Trooper Bowser's testimony of the confession. Ms. Townsend's compelling testimony was not denied by appellant. There were photographs which corroborated her testimony as well. Adding Trooper Bowser's other testimony, the Commonwealth clearly made its case. Choosing to testify against the advice of counsel, appellant provided no alternative explanation or evidence in support of acquittal. Appellant only apologized, and testified he did not remember what happened. Appellant also testified on cross-examination as follows:

Q: Now, you heard this morning from the witnesses.

A: Yeah.

Q: You don't have any reason at all, do you, to believe that what was said here isn't true?

A: No, I don't.

N.T. Trial, at 93.

¶ 19 There was no evidence which contradicted the untainted evidence of appellant's guilt, and we conclude the evidence of his guilt was so overwhelming that the trial court's admission of Trooper Bowser's testimony, even if error, does not require a new trial.[4]

■■■■ ¶ 20 Appellant's final claim is that he should be awarded a new trial based on the ineffective assistance of trial counsel. The standard of review when evaluating an ineffectiveness claim is well settled. Appellant must show: 1) the underlying claim is of arguable merit; 2) counsel had no reasonable basis for under-

taking or failing to undertake the act or omission in question; and 3) there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. *Commonwealth v. Pierce,* 515 Pa. 153, 157–60, 527 A.2d 973, 975–76 (1987). In other words, appellant must have suffered actual prejudice from the act or omission. *Id.* Trial counsel is presumed to have been effective and the burden is on appellant to prove otherwise. *Commonwealth v. Jones,* 546 Pa. 161, 175–77, 683 A.2d 1181, 1188 (1996).

■■■■ ¶ 21 Appellant first claims trial counsel was ineffective for failing to interview and prepare three defense witnesses for trial. None of these witnesses observed the events between appellant and Ms. Townsend. We agree with the trial court; these witnesses were present to testify to appellant's background only, and no pre-trial preparation would have changed the relevance of their testimony.

■■■■ ¶ 22 Appellant also argues trial counsel was ineffective because she failed to make an effort to obtain a transcript of his preliminary hearing. He claims that had counsel obtained this transcript, she would have been able to impeach Ms. Townsend at trial about whether appellant struck her with the gun and whether she knew if appellant had a drinking problem. However, appellant concedes cross-examination on these matters would not have brought about a different verdict; hence, this argument does not meet the third prong of the ineffectiveness test and need not be discussed further.

■■■■ ¶ 23 Appellant next claims counsel failed to address, by means of a professional opinion, whether appellant's mental status at the time of his confession enabled him to voluntarily and intelligently waive his right against self-incrimination. While this claim has arguable merit, there is no evidence indicating the confession followed

4. Pa.R.Crim.P. 1114 precludes sending written confessions out with the jury. *See also Commonwealth v. Terry,* 501 Pa. 626, 462 A.2d 676 (1983). Since the jury would not have examined the writing in any event, and as its contents were not disputed by appellant or counsel, our conclusion of harmless error is reaffirmed.

an involuntary or unknowing waiver. Given the results of the psychiatric evaluation counsel did have, we cannot fault the failure to pursue this issue. Particularly as the confession was not integral to the convictions, we find no ineffectiveness.

¶ 24 Finally, appellant claims trial counsel was ineffective because she did not discuss with him the minimum sentence and the possibility of pleading guilty but mentally ill. Counsel testified at the post sentence hearing that she discussed the possibility the mandatory minimum five-year weapon enhancement would apply if appellant were found guilty. N.T. Post Sentence Hearing, 1/19/99, at 27. Counsel was unsure of whether she had discussed the actual sentencing guidelines with appellant.

¶ 25 Appellant, however, was aware of the plea offer which recommended 30 to 60 months incarceration; counsel testified this offer was communicated to appellant orally and in writing. Appellant's knowledge of the offer is proven by an August 10, 1998 letter from counsel to appellant, which appellant testified he received and read. The letter also explained, based upon the strong evidence and counsel's concern appellant would be convicted, he could be facing a maximum sentence of 59 years and 90 days imprisonment and $90,-300 in fines should he be convicted of all charges.

¶ 26 Thus, the record reveals appellant was aware of the maximum sentence he could receive if convicted, and the possibility of a 30 to 60 month sentence if he accepted the plea agreement. Counsel testified appellant insisted on going to trial despite counsel's strong recommendations to accept the plea, because he wanted to tell his side of the story to the jury. Given that there was not much to his story, counsel's advice seems sound and credible. We must conclude appellant had awareness of the sentencing guidelines, which were nevertheless of no consequence to him.

¶ 27 Considering a plea of guilty but mentally ill, counsel did not believe there was enough supporting medical evidence; it was her "understanding of the law that if you don't have a psychiatric evaluation identifying mental illness, that guilty but mentally ill is not an available plea." N.T. Post Sentencing Hearing, at 25. Counsel's belief appellant did not have a mental illness stems from a psychiatric evaluation of appellant that he was "not so mentally ill at the time of the alleged offense that he was thereby unable to know the nature and quality of the act or that it was wrong." Evaluation, 7/22/98, at 7.

¶ 28 Counsel testified at the post sentence hearing that she discussed the option of pleading guilty but mentally ill with appellant on more than one occasion. N.T. Post Sentence Hearing, at 25. Further, there was a significant plea offer on the table, which appellant declined not because it was unreasonable, but because he wanted to tell his story. There is no reason to believe the guilty but mentally ill plea would have been more acceptable to appellant himself, much less the court or the Commonwealth. Appellant's claim therefore lacks merit.

¶ 29 In a final ineffectiveness claim, appellant argues that when considering all the individual claims of ineffectiveness cumulatively, counsel's ineffectiveness is evident so as to warrant the grant of a new trial. A finding of ineffective assistance may not be pieced together using claims which individually fail to meet the three-pronged test. *Commonwealth v. Jones*, 370 Pa.Super. 591, 593–95, 537 A.2d 32, 34 (1988). Appellant provides no authority on point to support the "proposition that the cumulative effect of trial counsel's errors may substitute for individual analysis." Post Sentence Opinion, 2/22/99, at 20.

¶ 30 Judgment of sentence affirmed.

¶ 31 BECK, J. concurs in the result.