J-A13026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BARRETT TUNSIL | : | |
| | : | |
| Appellant | : | No. 1990 EDA 2016 |

Appeal from the Judgment of Sentence April 25, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008448-2013

BEFORE:   LAZARUS, J., OTT, J. and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 08, 2017**

Barrett Tunsil appeals from the judgment of sentence entered on April 25, 2016, in the Philadelphia County Court of Common Pleas, made final by the denial of a post-sentence motion on June 6, 2016.  On October 6, 2014, a jury convicted Tunsil of unlawful contact with a minor, aggravated indecent assault of a child, corrupting the morals of a minor, endangering the welfare of a child ("EWOC"), and indecent assault.[1]  The court sentenced Tunsil to an aggregate term of 25 to 54 years' incarceration.  On appeal, Tunsil raises a myriad of claims, arguing the court erred with respect to various evidentiary

_____

[*] Former Justice specially assigned to the Superior Court.

[1]   18 Pa.C.S. §§ 6318(a)(1), 3125(b), 6301(a)(1)(i), 4304(a)(1), and 3126(a)(7), respectively.

rulings, in allowing a stipulation between the parties, in denying a continuance so that he could present a witness at sentencing, in sentencing him to consecutive sentences, and in finding him to be a sexually violent predator ("SVP").[2]  ***See*** Tunsil's Brief at 7.  After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm in part and reverse in part.

The trial court set forth the underlying facts follows:

> The evidence at trial established that [the victim] was living with her mother and [Tunsil] who she referred to as her stepdad. [The victim], who was 8 at the time, was also residing with her younger sister and [Tunsil]'s daughter at [his] residence.  It was during this time that [Tunsil] began to sexually abuse [the victim] by pulling her clothes down and inserting his finger into her vagina and sucking on her breast.  This conduct occurred in the kitchen of the house when no one else was home and in [Tunsil]'s bedroom while the others were downstairs.  [Tunsil] threatened to sell [the victim] to drug dealers or feed her to the rats if she told anyone.  [The victim] estimated that she was sexually assaulted more than five (5) times between the age of eight (8) and nine (9) while residing in [Tunsil]'s home.

> [Tunsil] would punish [the victim] by pulling down her pants and spanking her with his bare hand.  He would lock her in the basement in the dark prompting her to scream and kick on the door because she was so frightened.  It wasn't until [the victim] was removed from the home and placed with a foster family that she was comfortable enough to reveal the depravity she had endured.

> [Tunsil] testified and denied ever touching or abusing [the victim].

---

[2]  We have reorganized the last two issues based on the nature of our disposition.

Trial Court Opinion, 9/2/2016, at 2 (record citations omitted).

A jury trial was held from October 1, 2014, to October 6, 2014. On the last day, the jury convicted Tunsil of the above-mentioned crimes. Subsequently, Tunsil filed numerous *pro se* motions, including a request to represent himself at his SVP hearing and sentencing. The trial court granted this request on May 29, 2015, but provided that current counsel was to remain as back-up counsel.

On April 25, 2016, following an SVP hearing, the court found Tunsil to be an SVP. **See** N.T., 4/25/2016, at 65. On that same date, the court sentenced Tunsil to the following: (1) consecutive terms of nine to 20 years' incarceration for both the aggravated indecent assault and unlawful contact with a minor offenses; (2) a consecutive term of three-and-one-half to seven years' imprisonment for the EWOC charge; (3) a consecutive term of two-and-a-half to five years' incarceration for the corruption of minors offense; and (4) a consecutive term of one to two years' imprisonment for the indecent assault charge. **Id.** at 91-92.

Tunsil filed a counseled post-sentence motion on May 3, 2016. Several days later, on May 19, 2016, Tunsil's counsel filed a motion to withdraw. On June 6, 2016, the trial court denied both motions. This appeal followed.[3]

---

[3] On June 20, 2016, the trial court ordered Tunsil to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Tunsil filed a concise statement on July 10, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 2, 2016.

With regard to Tunsil's first issue, he maintains the cumulative effect of the trial court's erroneous rulings was harmful and deprived him of a fair trial. **See** Tunsil's Brief at 23. Tunsil states the court abused its discretion: (1) by sustaining objections to certain questions the defense raised on cross-examination; and (2) by allowing the Commonwealth to violate the best evidence rule insofar as permitting a witness to summarize a video. **See id.** at 23-34.

Our standard of review concerning challenges to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

**Commonwealth v. Johnson**, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

With respect to Tunsil's contentions regarding the limitation on his cross-examination, we are guided by the following. "The scope of cross-examination is a matter left to the sound discretion of the trial court, and the trial court's rulings will not be disturbed absent an abuse of discretion." **Commonwealth v. Boczkowski**, 846 A.2d 75, 96 (Pa. 2004). Moreover, "[i]n this Commonwealth, cross-examination is ordinarily limited to matters brought out on direct examination, except where the examiner is seeking to

- 4 -

show bias." *Commonwealth v. Lobel*, 440 A.2d 602, 605 (Pa. Super. 2009).

"A defendant has a fundamental right to present evidence provided that the

evidence is relevant and not subject to exclusion under one of our established

evidentiary rules." *Commonwealth v. McGowan*, 535 Pa. 292, 635 A.2d

113, 115 (Pa. 1993) (citation omitted). Relevant evidence "tends to prove or

disprove some material fact, or tends to make a fact at issue more or less

probable." *Commonwealth v. Patterson*, 91 A.3d 55, 71 (Pa. 2014), *citing*

*McGowan*, 635 A.2d at 115. Nevertheless, "[t]he right of confrontation does

not permit 'fishing expeditions.'" *Commonwealth v. Rosser*, 135 A.3d 1077,

1088 (Pa. Super. 2016).

> The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *[Delaware v.] Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).

> *Van Arsdall* articulates two inquiries for determining whether a limitation on cross-examination violates the confrontation clause. First, we inquire whether the limitation prejudiced the examination of that particular witness. In other words, absent the limitation, would the jury have received a "significantly different impression" of the witness's credibility? [*Van Arsdall*, 475 U.S.] at 679-80. Second, if there was error, we must determine whether it was harmless beyond a reasonable doubt; if so, reversal is not warranted. *Id.* at 681.

*Rosser*, 135 A.3d at 1088. "Without such limits, unchecked cross-examination on a theory of bias may unfairly prejudice the opposing party's case and only bring forth 'marginally relevant' evidence." *Id.* at 1088-1089 (citation and quotation omitted).

Turning to the present matter, Tunsil first argues the court erroneously sustained a Commonwealth objection to the following question asked of Denise Wilson, a forensic services manager and forensic interviewer for the Philadelphia Children's Alliance ("PCA"), who interviewed the victim on June 12, 2012: "Q. But you have really no way of knowing that [the victim] told you the truth? A. I don't." N.T., 10/3/2014, at 36. Tunsil insists his question was not a "fishing expedition" and

> [t]here would also have been no prejudice to the Commonwealth if Ms. Wilson had simply been allowed to answer the question. An answer of "no" would have underscored the lack of an independent investigation into the veracity of [the victim]'s claims, and that the jury was being asked to convict Tunsil based on the uncorroborated testimony of one alleged victim. An answer of "yes," followed by an explanation on redirect, would have benefitted the Commonwealth.

Tunsil's Brief at 26.

We note the "objected-to" statement was not stricken from the record. As such, Tunsil suffered no prejudice because the jury heard Wilson's answer. Accordingly, his first evidentiary issue fails.

Next, Tunsil challenges the Commonwealth's objection to the following exchange between defense counsel and Wilson regarding the victim's concentration during the interview process:

Q. Now, I noticed that when you are speaking with [the victim], [she] is multi-tasking? She's drawing at the same time?

A. Yes.

Q. Is that by design?

A. We provide like blank paper or either crayons or markers for the kid just so they can have something to do in the room if they wish to.

Q. Well, I understand doing that to make [the victim] feel comfortable but when you get to the portion of the interview where you're really getting the substantive allegation, why did you permit [the victim] to continue multi-tasking?

[The Commonwealth]: Objection.

THE COURT: Sustained.

[Defense Counsel]: Well, aren't you afraid that [the victim] is not really concentrating on your questions?

[The Commonwealth]: Objection.

THE COURT: Sustained.

[Defense Counsel]: [The victim] very rarely looked you in the eye when she recited her allegations?

[The Commonwealth]: Objection.

THE COURT: Sustained.

N.T., 10/3/2014, at 38-39. Tunsil contends, "These questions properly sought to remind the jury that [the victim] provided an allegation with devastating consequences to Tunsil while playing with crayons and markers. The fair inferences, that [the victim] made her allegations without focusing on details

and as a virtual afterthought, were relevant to [the victim]'s credibility." Tunsil's Brief at 27.

The court opined this testimony was either repetitive, not relevant, argumentative, or a statement by counsel and not an actual question. Trial Court Opinion, 9/2/2016, at 3. We agree with the trial court's findings and are not persuaded by Tunsil's argument that the court was prohibiting him from demonstrating the victim could have been distracted during the interview. Furthermore, as will be discussed *supra*, the jury was able to observe the victim's ability to concentrate and answer questions because the interview with Wilson was recorded and shown to the jury in *toto*. **See** N.T., 10/3/2014, at 29. As such, Tunsil's second evidentiary claim fails.

Third, Tunsil contends the court erred in sustaining an objection regarding Detective Emmanuel Gonzalez's testimony.[4] On cross-examination, Detective Gonzalez told defense counsel that he did not interview the victim because possible victims are to be interviewed by the Philadelphia Children's Alliance. **See** N.T., 10/3/2014, at 78. Subsequently, defense counsel asked him two questions, which are at issue: (1) "Well, aren't you at all concerned as a detective that perhaps children are being coached?"; and (2) "Well, didn't that occur to you, that [the victim] could have been coached?" **Id.** at 79. Both questions were objected to by the Commonwealth, and sustained by the

---

[4] Detective Gonzalez was assigned to Child Abuse Unit of the Special Victims Unit. **See** N.T., 10/3/2014, at 71.

trial court. *Id.* Tunsil maintains "[t]hese questions, going to whether customary procedures require police to interview a complaining witness in a felony case, and whether Detective Gonzalez had any concerns about the nature of [the victim]'s statement (whether it sounded like a child's account or instead bore the marks of adult suggestions) were relevant points of inquiry for the defense." Tunsil's Brief at 28. The trial court disagreed and reflected:

> The detective had already testified that the protocol was to have Philadelphia Children's Alliance interview the victim. Consequently what he may or may not have wanted was irrelevant…. The detective had testified he didn't interview the witness and that he was responsible for processing the arrest paperwork and making the arrest. The question [regarding whether the victim was coached] was beyond the scope of the direct examination.

Trial Court Opinion, 9/2/2016, at 3. Viewing the evidence as a whole, we concur with the trial court that these questions were either irrelevant or outside the scope of direct examination. Accordingly, the trial court did not abuse its discretion by sustaining these inquiries during Detective Gonzalez's testimony.

Fourth, Tunsil claims the court abused its discretion in limiting his cross-examination of Andrew Jarzyniecki, an employee of Philadelphia Department of Human Services ("DHS").[5] *See* Tunsil's Brief at 28. Jarzyniecki testified the victim had told him that Tunsil was physically abusing her, including the

---

[5]  Jarzyniecki was assigned to investigate a report of suspected abuse or neglect with respect to the victim.  N.T., 10/3/2014, at 45.

spankings, an incident where Tunsil held her over a banister, and about him locking her in the basement. *See* N.T. 10/3/2014, at 52-53. On cross-examination, defense counsel asked Jarzyniecki the following questions: "(1) Does DHS have a policy regarding corporal punishment?"; and (2) "Well, are you instructed to formulate opinions or reports relative to people administering corporal punishment?" *Id.* at 68-69. Like above, the Commonwealth objected to both questions and the trial court sustained those objections. *See id.* The trial court explained its rationale as follows: "Mr. Jarzyniecki was called by the Commonwealth to testify to his investigation of the suspected abuse and neglect of complainant, [the victim]. As such the questions concerning policies for corporal punishment were irrelevant to the witness'[s] testimony." Trial Court Opinion, 9/2/2016, at 4. Again, we agree with the trial court's reasoning. This line of questioning was not relevant to the scope of Jarzyniecki's direct examination. Accordingly, this evidentiary claim is meritless.

Tunsil next argues the trial court allowed the Commonwealth to violate the best evidence rule insofar as it permitted a witness to summarize a video. By way of background, a video of the victim's PCA interview with Wilson was played during Wilson's direct examination. *See* N.T., 10/3/2014, at 29. Subsequently, during Jarzyniecki's direct examination, he testified that he observed the victim's interactions during the PCA recorded interview. *See id.*

at 53-54.  Over objection, Jarzyniecki detailed what the victim said during the interview regarding the sexual assault.  *See id.* at 54.  Tunsil asserts:

> It is no secret that repetition wins cases.  In the above manner, the Commonwealth was erroneously allowed, through Mr. Jarzyniecki, to provide a summary of the video that was more concise and compelling than the statements of [the victim] that were actually played on the video for the jury.  In effect, Mr. Jarzyniecki provided a "replay" that had more prejudicial impact than the original.

Tunsil's Brief at 30.

Tunsil's argument is not actually an attack on the best evidence rule[6] as it is more concerned with the repeated admission of evidence concerning the victim's interview.  In any event, the best evidence rule was not violated because the videotape was admitted prior to Jarzyniecki's testimony and the jury was given the opportunity to view the entire interview.  Furthermore, as

---

[6]  The "best evidence rule"

> is codified in Pennsylvania Rule of Evidence 1002, which provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise."  Pa.R.E. 1002.  Courts apply the best-evidence rule when the contents of documentary evidence are at issue — that is, if the terms of a writing must be proven to make a case or provide a defense.  *Commonwealth v. Townsend*, 2000 PA Super 32, 747 A.2d 376, 380 (Pa. Super. 2000).  Thus, Rule 1002 requires that an original writing, recording, or photograph be introduced at trial only if the proponent must prove the contents of the writing, recording, or photograph to prove the elements of its case.  *Id.*

*Commonwealth v. Ribot*, 169 A.3d 64, 67 (Pa. Super. 2017).

the Commonwealth mentions, "[t]here is nothing in the best evidence rule that bars the Commonwealth from referencing a recording once its content has been proven." Commonwealth's Brief at 18. Additionally, as the trial court points out, "Jarzyniecki was describing his investigation and how he conducted his investigation as well as what he learned through that investigation. The testimony was clearly relevant and simply because it repeated testimony previously received doesn't make it error." Trial Court Opinion, 9/2/2016, at 4.[7]

Furthermore, if there was such an error in admitting this testimony, it was harmless.

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Burno*, 154 A.3d 764, 787 (Pa. 2017), *quoting Commonwealth v. Simmons*, 662 A.2d 621, 633 (Pa. 1995). The second prong of the harmless error test would apply here – that the evidence of

---

[7] Jarzyniecki's testimony regarding what he witnessed during his observation of the interview does not impact the best evidence rule. *See Commonwealth v. Bennett*, 124 A.3d 327, 332 (Pa. Super. 2015) ("The best evidence rule does not address the Commonwealth's presentation of video versus eyewitness testimony.").

Jarzyniecki's testimony was merely cumulative of the other untainted evidence, namely the videotape. Accordingly, this evidentiary issue fails.

Lastly, we find that because all of Tunsil's evidentiary claims were without merit, his argument that the cumulative effect of the trial court's erroneous rulings was harmful and deprived him of a fair trial, also fails. **See**

**Commonwealth v. Freeman**, 827 A.2d 385, 416 (Pa. 2003) ("[i]t is settled ... that no number of failed claims may collectively attain merit if they could not do so individually.") (internal quotations omitted).

In Tunsil's second argument, he contends the trial court erred in granting a stipulation because it violated his constitutional rights to confront and cross-examine a key Commonwealth witness, Diane Dawkins. **See** Tunsil's Brief at 31. Tunsil states the court "should have engaged in a colloquy with Tunsil to determine if he agreed with the following stipulation[:]"[8]

> There's been a stipulation by and between counsel that if called to testify, Diane Dawkins will testify that she is the previous foster mother to [the victim] and [her sister]. She would testify that in late May of 2012, while DHS worker Charles Williams was at her home, [the victim's] stepfather, Mr. Tunsil, would call [the victim] his favorite and would sexually abuse her. Ms. Dawkins asked [the victim] why she would not say anything before and [the victim] said because no one had ever asked her about good touch or bad touch before.
>
> …
>
> Ms. Dawkins was unable to testify at trial because she had an out of state family emergency she had to attend to.

_____

[8] Tunsil's Brief at 32.

N.T., 10/3/2014, at 82.

Tunsil argues:

[T]he stipulation was harmful to the defense case on multiple levels. First, it allowed the jury to hear the testimony of Ms. Dawkins, without any cross-examination as to the circumstances of what [the victim] supposedly told her, and without the opportunity for the jury to do an independent assessment of Ms. Dawkin[s'] credibility. Second, the stipulation also allowed the jury to hear additional testimony from [the victim], long after she left the witness stand and was no longer subject to cross-examination, that confirmed her previous allegations of sexual abuse at the hands of Mr. Tunsil. The record shows no advantage to the defense from agreeing to the stipulation, but multiple bases for unfair prejudice. If Tunsil had rejected the proposed stipulation, the most likely outcome was that the jury would not have heard from Ms. Dawkins. Even if the Court had granted a continuance allowing the Commonwealth to bring Ms. Dawkins into court for live testimony, a continuance would not have prejudiced Tunsil, because he had already been in custody for more than two years at the time of trial.

Under these circumstances, the Court should have rejected the stipulation unless it determined, either sua sponte or through defense counsel, that Mr. Tunsil agreed with it. This safeguard of Tunsil's confrontation and cross-examination rights would have required at most a few minutes of the Court's time during a recess. The Court followed this procedure when determining if Tunsil agreed with defense counsel's recommendation to not call Corinne Pettis as a defense witness. Tunsil's rights of confrontation were as deserving of protection as his constitutional right to call defense witnesses of his choice. The [t]rial [c]ourt's approval of a stipulation that was prejudicial to Tunsil on multiple levels without any corresponding benefit violated Tunsil's rights to confrontation and cross-examination under the Sixth Amendment and Article I, [S]ection 9 of the Pennsylvania Constitution.

Tunsil's Brief at 32-33 (reproduced record citations omitted).

Before we may address the substance of this claim, we note Tunsil raises this issue for the first time in his concise statement. *See* Tunsil's Concise

Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b)(4), 7/10/2016, at 4-6. A review of the records reveals he did not raise the issue at trial or in his post-sentence motions.

It is well-settled that "[i]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Moreover, "it is axiomatic that issues are preserved when objections are made timely to the error or offense." *Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008). "The purpose of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and, thereby, to conserve limited judicial resources." *Commonwealth v. Sanchez*, 36 A.3d 24, 42 (Pa. 2011). "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008). Turning to the present matter, because Tunsil failed to raise a timely and specific objection with respect to the stipulation, he has waived this issue.[9]

_____

[9] Assuming, *arguendo*, that Tunsil did properly preserve the claim, we would rely on the trial court's findings:

> At trial, [Tunsil] entered into a stipulation to the testimony of Diane Dawkins. Now, [Tunsil], through new counsel, argues that it was error to stipulate to the testimony because it deprived him of the right to cross examine and confront the witness. [Tunsil] contends that the Court had a duty to make sure the decision to enter into the stipulation was with [Tunsil]'s

In his third argument, Tunsil complains the trial court erred in failing to grant his continuance request that was necessary for him to enforce a subpoena that had been properly served on a defense witness, his daughter, for the sentencing hearing. **See** Tunsil's Brief at 34. By way of a background, Tunsil states that while he was awaiting sentencing, the trial court entered an order, permitting his daughter, Corrine N. Pettis, to be subpoenaed. **See** Order, 9/4/2015.[10] Despite proper service, Pettis did not appear at Tunsil's sentencing and consequently, defense counsel requested a continuance to allow Pettis to be brought into court. **See** N.T., 4/25/2016, at 3-9. When asked about Pettis, counsel stated, "This is a biological daughter living in the household who, with my understanding, from Mr. Tunsil, would confirm that

---

agreement. No such duty exists. First and foremost, [Tunsil] was present and took the stand in his own defense. At no time has he complained about the stipulation that was entered into with the Commonwealth. More importantly, [Tunsil]'s counsel insisted on the stipulation so he could argue the inconsistencies in [the victim]'s accounts in closing argument. This Court had no duty to ensure [Tunsil] was comfortable with the stipulation and counsel cannot be faulted simply because his strategy failed. See Commonwealth v. Speight, 677 A.2d 317, 322 (Pa. 1996) (did decision by trial counsel have "some reasonable basis designed to effectuate … client's interests, and if so … inquiry ends").

Trial Court Opinion, 9/2/2016, at 4 (record citation omitted). Additionally, we note Tunsil provides no support for his assertion that the trial court should have colloquied him regarding his understanding and acceptance of the stipulation. Tunsil's allegation would be better suited for an ineffective assistance of counsel claim in a post-conviction collateral petition.

[10] Pettis did not testify at Tunsil's trial.

- 16 -

he did what he was supposed to as a dad. He put food on the table and he never abused [Pettis]. She is expected to confirm that." *Id.* at 4-5. The court stated it would not relitigate the issue of whether Tunsil sexually assaulted the victim. *See id.* at 5. Counsel then responded that Pettis's testimony would be relevant to one of the SVP factors, that his conduct did not involve multiple victims. *See id.* After some discussion, the parties stipulated there was only one victim in this specific case. *See id.* at 7. Defense counsel stated he still wanted Pettis's testimony to show that Tunsil "was a good dad[.]" *Id.* at 8. The court then denied the continuance request, stating its rationale:

> This case is almost a year and a half old from the time when the jury rendered their verdict. It has been continued a number of times, and I'm not going to continue it anymore. I believe the Commonwealth has said they would stipulate to certain things that you're requesting; and, quite frankly, the issue isn't whether or not [Tunsil] put food on the table and a roof over their heads. That's not the issue, but your objection is noted.

*Id.* at 9.

Tunsil argues his "rights to compulsory process under the Sixth Amendment and as further guaranteed by Article 1, [S]ection 9 of the Pennsylvania Constitution extended through sentencing." Tunsil's Brief at 36. Relying on the continuance test in *Commonwealth v. Maute*, 485 A.2d 1138, 1144 (Pa. Super. 1984), Tunsil complains he should have been granted a continuance because: (1) Pettis "was 'necessary to strengthen the defense,' as she would have provided a description of the Tunsil household that was

radically different from (to quote the [t]rial [c]ourt) the 'atmosphere of cruelty and manipulation' invoked by [the victim]";[11] (2) Tunsil exercised all possible diligence to secure Pettis's attendance at trial (by hiring a private investigator, issuing a subpoena, serving said subpoena);[12] and (3) "with a valid address and phone number for [Pettis' legal guardian], there was every likelihood that the Court could have compelled compliance with the [s]ubpoena, by sending a [d]eputy [s]heriff to the residence."[13]

Our standard of review regarding continuances is well-settled:

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. [A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated.

**Commonwealth v. Hansley**, 24 A.3d 410, 418 (Pa. Super. 2011), *appeal denied*, 32 A.3d 1275 (Pa. 2011) (citation omitted). Further, "[i]n reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice[.]" **Id.** (citation omitted).

---

[11] Tunsil's Brief at 36 (reproduced record citations omitted).

[12] **Id.** at 37.

[13] **Id.**

In **Maute**, which Tunsil relies on, a panel of this Court addressed the decision to grant or refuse a continuance based on a material witness:

> The considerations which underlie the exercise of a trial judge's discretion to grant or refuse a continuance based on the absence of a material witness include whether the witness is essential to the defense or necessary to strengthen the defense, the diligence exercised to procure the witness' presence at trial, the facts to which the witness could testify, and the likelihood that the witness could be procured at the next term of court.

**Commonwealth v. Maute**, 485 A.2d 1138, 1144 (Pa. Super. 1984), *citing* **Commonwealth v. Howard**, 353 A.2d 438, 439 (Pa. 1976). The **Howard** Court also opined: "If testimony which an absent witness would give is merely cumulative or available from another source, then a continuance may be properly denied." **Id.**

Here, the court explained its reasoning as follows:

> This witness, Corrine Pettis, was present at trial and [Tunsil] decided not to call her as a witness. [Tunsil] was convicted of these crimes by a jury on October 6, 2014. A Megan's Law assessment was ordered and the matter was continued for sentencing. Thereafter, the sentencing hearing was continued on January 14, 2015; February 27, 2015; May 29, 2015; August 10, 2015; September 4, 2015; September 21, 2015; October 23, 2015; and December 21, 2015. [Tunsil]'s sentencing hearing occurred 567 days after the verdict in his case. This Court was not receptive to prolonging the matter any longer. This was because all of the continuances were at the behest of [Tunsil]. The first two continuances were joint requests. However, the remaining six continuances were defense requests. Moreover, the Commonwealth agreed to stipulate to the proposed testimony. [Tunsil] was not prejudiced by the denial of his request for a continuance.

Trial Court Opinion, 9/2/2016, at 5 (citations omitted). Based on the specific circumstances of this case (including the fact that the continuance request

- 19 -

was made after eight continuances were already granted in the matter, the request was made at sentencing as opposed to trial, and the Commonwealth stipulated to certain testimony regarding the witness), we do not find that the trial court demonstrated "prejudice or a palpable and manifest abuse." **Hansley**, 24 A.3d at 418. Accordingly, Tunsil's third argument fails.

Next, Tunsil claims his aggregate sentence was manifestly excessive and amounted to cruel and unusual punishment. **See** Tunsil's Brief at 41. Tunsil states the imposition of consecutive sentences is not proportional to the crimes where it was a case "that involved no indecent exposure, intercourse, or ejaculation[.]" **Id.** With respect to his sentence being manifestly excessive, Tunsil points to the following: (1) the victim did not sustain serious physical injuries as a result of his fondling; (2) it appears the victim has been able to move on from "whatever"[14] happened at his home; and (3) there was a 34-year lapse between his prior conviction and the present assault. **See id.** at 43. He states, "The Court did not explain the basis for consecutive sentences on April 25, 2016, for charges that evidently arose from the same factual circumstances." **Id.** at 44. With regard to his excessive sentence amounting to cruel and unusual punishment, Tunsil relies on **Commonwealth v. Barnett**, 50 A.3d 176 (Pa. 2012). **See** Tunsil's Brief at 46. He contends

---

[14] Tunsil's Brief at 43.

the facts in his case were not so lurid as those in **Barnett**, and therefore, the aggregate sentence imposed was grossly disproportionate. **Id.** at 47-48.

As presented, Tunsil's issues challenge the discretionary aspects of his sentence. **See Commonwealth v. Lutes**, 793 A.2d 949 (Pa. Super. 2002) (explaining argument that sentence is manifestly excessive challenges discretionary aspects of sentencing). "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. Hoch**, 936 A.2d 515, 518 (Pa. Super. 2007) (citations and quotation marks omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011) (footnotes omitted).

Here, Tunsil filed a timely notice of appeal and included the requisite statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. **See** Tunsil's Brief at 22-23. Moreover, counsel for Tunsil preserved the claims by raising them in the May 3, 2016, post-sentence motion. Therefore, we may proceed to determine whether Tunsil has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Edwards***, 71 A.3d 323, 330 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013).

With respect to whether an issue presents a substantial question, we are guided by the following:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***See Commonwealth v. Paul***, 2007 PA Super 134, 925 A.2d 825 (Pa. Super. 2007). "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin***, 2013 PA Super 70, 65 A.3d 932, 2013 WL 1313089, *2 (Pa. Super. filed 4/2/13) (quotation and quotation marks omitted).

***Edwards***, 71 A.3d at 330 (citation omitted). Moreover,

> [w]e have stated that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Long standing precedent of this Court recognizes that 42 Pa.C.S.[] § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence. ...

> However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

***Commonwealth v. Zirkle***, 107 A.3d 127, 133-134 (Pa. Super. 2014) (citations and internal quotation marks omitted).

Here, the criminal conduct included evidence that Tunsil, who was in a caretaker role, sexually abused the victim for over a year and on multiple occasions. He threatened her with certain consequences so she would not tell anyone about the abuse, physically punished her, and locked her in the basement for long time periods.[15] Tunsil also had a prior criminal history of sexually abusing a child. As indicated above, Tunsil received consecutive sentences for the crimes of unlawful contact with a minor, aggravated indecent assault of a child, corrupting the morals of a minor, EWOC, and indecent assault, which amounted to 25 to 54 years' incarceration. Pursuant to **Zirkle**, given the natures of the crimes at issue and the circumstances surrounding those convictions as well as the length of his sentence, we conclude the trial court's decision to impose consecutive sentences did not result in a facially excessive sentence. Therefore, Tunsil's claim fails to raise a substantial question. **See id.**[16]

_____

[15] The victim even testified to the following: "Well, when I usually didn't eat all my food, he'll put me downstairs in the basement where it's like a big hole and then he'll say it's like rats down there and then he'll put peanut butter all over me and tie me up to the wall." N.T., 10/2/2014, at 26.

[16] In any event, we note:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

Moreover, to the extent Tunsil claims his aggregate sentence amounts to cruel and unusual punishment, we find his assertion is just another reiteration of his manifestly excessive argument. Nevertheless, we note both the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution, forbid the imposition of "cruel and unusual punishments." U.S. Const., amend. VIII; Pa. Const., Art. 1, Sec. 13. *See Commonwealth v. Spells*, 612 A.2d 458, 461 (Pa. Super. 1992) (the guarantee against cruel punishment in the state and federal constitutions is coextensive), *appeal dismissed as improvidently granted*, 643 A.2d 1078 (Pa. 1994). This Court has explained that a punishment is cruel and unusual if it

_____

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013). Here, the trial court addressed Tunsil's challenge as follows:

This Court took into account all of the factors delineated in 42 Pa.C.S. § 9721(b). As stated on the record, this Court considered all of the reports, the arguments of counsel, the testimony from a lengthy sentencing hearing and the guidelines in fashioning an appropriate sentence. Here based on [Tunsil]'s prior history of sexually abusing children and the high risk that given the chance he would reoffend, a sentence running consecutive was reasonable and appropriate.

Trial Court Opinion, 9/2/2016, at 6. Based on the record, we would find the trial court did not abuse its discretion in imposing Tunsil's sentence.

- 24 -

is "wholly and irrationally disproportionate to the crime,"[17] or, in other words, "so greatly disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice." **Commonwealth v. Ehrsam**, 512 A.2d 1199, 1210 (Pa. Super. 1986), *appeal denied*, 527 A.2d 535 (Pa. 1987), *cert. denied*, 439 U.S. 932 (1989).  Here, as provided above, we conclude that Tunsil's repeated sexual and emotional abuse of the victim for over a year warrants the imposition of consecutive sentences and does not amount to cruel and unusual punishment.[18]

In his final claim, Tunsil asserts the trial court erroneously concluded that he was an SVP because the Commonwealth failed to prove such a determination by clear and convincing evidence.  **See** Tunsil's Brief at 38.

Prior to analyzing the issue, we *sua sponte* discuss the impact of the recent decision in **Commonwealth v. Butler**, ___ A.3d ___, 2017 PA Super 344

_____

[17] **Commonwealth v. Yasipour**, 957 A.2d 734, 743 (Pa. Super. 2008), *appeal denied*, 980 A.2d 111 (Pa. 2009).

[18] We also note Tunsil's reliance on **Barnett** is misplaced.  As indicated above, Tunsil alleges the facts in that case are more lurid than in the present matter and therefore, his sentence should be considered cruel and unusual.  However, Tunsil's claims fails to take into consideration that he was convicted of a more serious offense, aggravated indecent assault, than the defendant in **Barnett**. Therefore, one cannot conclusively determine that one case is more "lurid" than another.  Accordingly, his argument fails.

[1225 WDA 2016] (Oct. 31, 2017),[19] which addressed the issue of "whether the framework for designating a convicted defendant an SVP, which in this case increased Appellant's minimum registration requirement [under the Pennsylvania's Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§9799.10-9799.41], implicates the legality of his or her sentence." ***Butler***, \_\_ A.3d at \_\_, 2017 PA Super 344, *4 (Oct. 31, 21017).[20] The ***Butler*** court further explained the issue as follows:

> To understand the issue presented in this case, it is necessary to review the relevant portions of SORNA that address SVPs. Under SORNA, an individual convicted of a sexually violent offense, such as sexually corrupting minors in this case, must be evaluated by the SOAB. 42 Pa.C.S.A. § 9799.24(a). The SOAB conducts a 15-factor analysis to determine if the individual should be designated

---

[19] "[T]he general rule in Pennsylvania is to apply the law in effect at the time of the appellate decision." ***Commonwealth v. Housman***, 986 A.2d 822, 840 (Pa. 2009).

[20] While we acknowledged Tunsil did not raise the issue of ***Butler***'s application to his case, we are guided by the following:

> Generally, issues not raised before the trial court are waived for appellate purposes. Pa.R.A.P. 302(a). Similarly, this Court generally may not reverse, modify, or vacate an order or judgment of sentence for a reason not raised by the parties. ***See Johnson v. Lansdale Borough***, 146 A.3d 696, 709 (Pa. 2016) (citations omitted). Notwithstanding these general rules, "[a] challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*." ***Commonwealth v. Batts***, 163 A.3d 410, 434 (Pa. 2017) (citation omitted).

***Butler***, \_\_ A.3d at \_\_, 2017 PA Super 344, *4 (Oct. 31, 21017). With respect to legality of sentencing questions, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Nero***, 58 A.3d 802, 805 (Pa. Super. 2012).

an SVP. 42 Pa.C.S.A. § 9799.24(b). The SOAB then submits a report to the prosecuting authority. 42 Pa.C.S.A. § 9799.24(d). Upon praecipe by the prosecuting authority, the trial court schedules an SVP hearing. 42 Pa.C.S.A. § 9799.24(e)(1). At the conclusion of that hearing, "the court [determines] whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP]." 42 Pa.C.S.A. § 9799.24(e)(3). It is this last step in the process, section 9799.24(e)(3), that is at issue in this case.

**Butler**, ___ A.3d at ___, 2017 PA Super 344, *6-7 (Oct. 31, 21017).

The **Butler** court relied on a recent decision by the Pennsylvania Supreme Court in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017). In **Muniz**, the Supreme Court reversed the longstanding legal precedence of this Commonwealth by holding that registration requirements under SORNA were not civil in nature but punitive, and, consequently, the retroactive application of SORNA's registration provisions violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **Id.** at 1218.

The **Butler** court also noted the current controlling law with respect to mandatory minimum sentences. In **Alleyne v. United States**, 133 S.Ct. 2151 (U.S. 2013), the United States Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." **Alleyne**, 133 S.Ct. at 2155. The Court expanded upon its holding in **Apprendi**,[21] which applied only to facts that increased the statutory maximum for a crime, to

_____

[21] **Apprendi v. New Jersey**, 530 U.S. 466 (2000).

include facts, which increase the mandatory minimum sentence.  *Id.*  The

*Butler* court stated:

> *Apprendi* and *Alleyne* apply to all types of punishment, not just imprisonment.  *See S. Union Co. v. United States*, 567 U.S. 343, 346-360, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012).  Thus, as our Supreme Court has stated, if registration requirements are punishment, then the facts leading to registration requirements need to be found by the fact-finder chosen by the defendant, be it a judge or a jury, beyond a reasonable doubt.  *See Commonwealth v. Lee*, 594 Pa. 266, 935 A.2d 865, 880 (Pa. 2007).  In *Lee*, our Supreme Court considered whether Megan's Law II's[22] requirement that SVPs register for life violated *Apprendi*.  Our Supreme Court stated that defendants only succeeded on their claim
>
>> if [our Supreme Court] accept[s] the premise, which [it had] all but categorically rejected in [its] prior cases, that the registration, notification, and counseling provisions of Megan's Law II [were] punitive in the constitutional sense, thus requiring observance of all the due process protections that attend criminal prosecution, especially those identified by the [Supreme Court of the United States'] decision in *Apprendi*.
>
> *Id.*

*Butler*, ___ A.3d at ___, 2017 PA Super 344, *10-11 (Oct. 31, 21017).

With *Muniz*, *Alleyne*, and *Apprendi* in mind, the *Butler* court then

held:

> We recognize that our Supreme Court did not consider the ramifications of its decision in *Muniz* with respect to individuals designated as SVPs for crimes committed after SORNA's effective date.  Nonetheless, our Supreme Court's holding that registration requirements under SORNA constitute a form of criminal punishment is dispositive of the issue presented in this case.  In other words, since our Supreme Court has held that SORNA

---

[22]  Megan's Law was the predecessor to SORNA.

registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi** and **Alleyne**, a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny. Accordingly, we are constrained to **hold that section 9799.24(e)(3) is unconstitutional and [the a]ppellant's judgment of sentence, to the extent it required him to register as an SVP for life, was illegal**.

As the sole statutory mechanism for SVP designation is constitutionally flawed, there is no longer a legitimate path forward for undertaking adjudications pursuant to section 9799.24. **As such, trial courts may no longer designate convicted defendants as SVPs, nor may they hold SVP hearings, until our General Assembly enacts a constitutional designation mechanism.**[12] **Cf. Commonwealth v. Hopkins**, 632 Pa. 36, 117 A.3d 247, 258-262 (Pa. 2015) (finding that trial courts cannot impose mandatory minimum sentences until the General Assembly enacts a statute which provides a constitutional mechanism to determine if the defendant is subject to the mandatory minimum sentence). Instead, trial courts must notify a defendant that he or she is required to register for 15 years if he or she is convicted of a Tier I sexual offense, 25 years if he or she is convicted of a Tier II sexual offense, or life if he or she is convicted of a Tier III sexual offense.

In sum, we are constrained to hold that section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt. Moreover, we are constrained to hold trial courts cannot designate convicted defendants SVPs (nor may they hold SVP hearings) until our General Assembly enacts a constitutional designation mechanism. Instead, trial courts must notify a defendant that he or she is

- 29 -

required to register for 15 years if he or she is convicted of a Tier I sexual offense, 25 years if he or she is convicted of a Tier II sexual offense, or life if he or she is convicted of a Tier III sexual offense.

_____

[12] Allowing a jury or the trial court (in a waiver trial) to make an SVP determination during the guilt phase of a trial runs counter to the plain language of section 9799.24(e)(3) of SORNA and raises a myriad of other constitutional concerns. Because of these problems, and because **Muniz** now deems SORNA a punitive statute and no longer a collateral civil consequence of a sex offense conviction, we are constrained to hold that the adjudicative provisions found in section 9799.24(e)(3) are no longer constitutional and not severable from the remainder of the SVP designation framework.

**Id.** at 11-14 (emphasis added; one footnote omitted).

Turning to the present matter, SORNA applies to Tunsil's case, in which he was deemed an SVP at the April 25, 2016, SVP hearing and ordered to comply with the lifetime registration requirements based on his aggravated indecent assault conviction. **See** 42 Pa.C.S. 9799.13(1) (SORNA applies to a person convicted of a "sexually violent offense" on or after the effective date of the section, which was December 20, 2012); § 9799.12 (defining "sexually violent offense" as Tier I, II, or III offense listed in § 9799.14); § 9799.14(d)(7) (classifying aggravated indecent assault as a Tier III sexual offense); § 9799.15(a)(3) ("[a]n individual convicted of a Tier III sexual offense shall register for the life of the individual").

Accordingly, and pursuant to the **Butler** decision, we are constrained to reverse the trial court's April 25, 2016, sentencing order finding that Tunsil is

an SVP as such a determination is no longer valid.  Therefore, we remand for the sole purpose of having the trial court issue the appropriate notice under 42 Pa.C.S § 9799.23 as to his registration requirements.  **Butler**, ___ A.3d at ___, 2017 PA Super 344, *13 (Oct. 31, 21017).  Furthermore, we need not address the issue Tunsil raised on appeal, which challenged the sufficiency of his SVP designation.

Order reversed.  Judgment of sentence affirmed in all other respects. Case remanded.  Jurisdiction relinquished.[23]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017

---

[23] In conjunction with our decision, we grant the Commonwealth's May 12, 2017, motion to correct an omission in the record pursuant to Pa.R.A.P. 1926. We agree the missing documents were useful to the resolution of the issues on appeal.